HEARD NOVEMBER TERM, 1874.

## MOBLEY *vs.* CURETON.

On demurrer by plaintiff to defendants' answer, the Judge who heard the case endorsed "Demurrer overruled:" *Held*, That this was an interlocutory and not a final order on which judgment could be entered dismissing the complaint.

The fact that an heir holds his share of descended real estate under a decree for partition which assigned the different shares at fixed values, is no defense to an action by a creditor of the ancestor to subject the lands to the payment of his debts.

That the personal estate of the intestate was large and more than sufficient to pay his debts is no defense to an action against the heir to subject the real estate to the payment of the debts.

Demurrer to defenses, alleged in the answer, of payment and laches: *Held* to have been properly overruled;—the facts set forth as proof of payment and laches, being insufficient to enable the Court to determine the questions of payment or laches.

That judgment, without satisfaction, was recovered against the executor for the same debt, is no defense to an action against the heir to subject the real estate to the payment of the debt.

In an action against husband and wife to subject real estate which had descended to the wife to the payment of debts of her ancestor, defendants alleged in their answer a discharge of the husband in bankruptcy subsequent to the indebtedness and the sale of the lands under the proceedings: *Held*, That a demurrer to this allegation was properly overruled.

A demurrer to a defense alleging a former recovery must be determined by the facts stated in the answer, and the record cannot be used to modify or affect them.

Where an answer sets up defenses, other than a counter claim, and a demurrer thereto is overruled, the effect is not to dismiss the complaint, but to leave the allegations as "controverted by a direct denial or avoidance, as the case may require," under the rule prescribed by ? 191 of the Code of Procedure.

BEFORE MACKEY, J., AT LANCASTER, JULY TERM, 1874.

This was an action by Edward B. Mobley, executor of Biggers Mobley, deceased, against J. S. Cureton, F. D. Green and M. V. Green, his wife, and J. M. Green and Eliza J. Green, his wife.

The case and exceptions, as set forth in the brief upon which the case was heard in this Court, are as follows :

This action was begun in the Court of Common Pleas for Lancaster County on the 13th day of June, 1871, by Edward B. Mobley, as executor of Biggers Mobley, against the above named defendants, as heirs at law of Thomas K. Cureton, deceased. The cause of action is a sealed note, made by the said Thomas K. Cureton, on the 23d of February, 1854, in favor of the said Biggers Mobley, for the sum of $1,373.88, due on 18th day of March, 1854, with interest due and payable annually ; credited with the sum of $25 on the 18th of March, 1855, the sum of $25 on the 18th of March, 1856, and with the sum of $100 on 15th April, 1857.

The complaint sets out copies of said note and credits; alleges the death of the said Thomas K. Cureton on the 3d of July, 1854, seized in fee of the real estate therein described, leaving as his heirs at law his widow, Eliza R. Cureton, his children, James E. Cureton, T. K. Cureton, Jr., and the defendants, J. S. Cureton, M. V., now the wife of the defendant F. D. Green, and Eliza J., now the wife of the defendant James M. Green ; that the said Eliza R., widow, has since died testate, and the said T. K. Cureton, Jr., as executor of her will, has commenced proceedings in the Court of Common Pleas for said County for the settlement of her estate, alleging its insolvency, and that the Court has made an order under said proceeding restraining creditors from suing the executor at law, and requiring them to establish their respective claims before a Referee ; that the said J. E. Cureton has since died intestate and insolvent ; that he has no administrator and no estate upon which to administer ; and that the said T. K. Cureton, Jr., has been adjudicated a bankrupt under the laws of the United States ; alleges that certain real estate therein described descended to the defendants, J. S. Cureton, M. V. Green and Eliza J. Green, as heirs at law of the said Thomas K. Cureton, deceased, and that the same exceeded in value the amount of the debt and interest herein claimed ; alleges the death of Biggers Mobley testate, the appointment and qualification of the plaintiff as his executor ; that the said note has never been paid, except as to the credits heretofore stated, and demands judgment against the defendants for the amount and interest still due upon the same.

The answer of the defendant J. S. Cureton is contained in the following paragraphs:

1. That he denies that the lands described in the complaint as " the Stinson Place " and " the Pea Top Place " descended to him and the defendant Eliza Jane Green, as heirs at law of T. K. Cureton, deceased, but states that in the partition and division of the real and personal estate of said deceased amongst his distributees and heirs at law, by the order or decree of a Court of Equity held for Lancaster District, the said lands were assigned or allotted to them at prices or values fixed upon the same by Commissioners appointed by the said Court. So that defendant states that, although they were both infants at the time, the one being about five and the other about eleven years of age, they thereby became virtually the purchasers of said land at the prices fixed upon the same as aforesaid.

2. That on or about the 15th day of October, A. D. 1860, at Lancaster Court House, in an action brought in the Court of Common Pleas by the said Biggers Mobley against Samuel B. Massey and James E. Cureton, as administrators of the estate of the said T. K. Cureton, deceased, for the same cause of action as that set forth in the complaint herein, the said Biggers Mobley recovered judgment, duly allowed upon the merits thereof, against the said administrators for $1,959.53.

3. That subsequent to the recovery of said judgment, the said administrators, this defendant is informed and believes, with a view to the payment and satisfaction thereof, assigned to the said Biggers Mobley several sealed notes by one Wm. Stevens, to them the said administrators made payable, for sums of money in the aggregate exceeding in amount the money then due on said judgment; and that the said Wm. Stevens was abundantly solvent and fully able to pay said amount of money.

4. That the personal estate left by the said T. K. Cureton was very large and far more than sufficient for the payment of all just debts against him.

5. That the lapse of time since the execution of the note set forth as the cause of action in the complaint, the ample sufficiency of the personal estate left by the said T. K. Cureton for the payment of all just debts against him, and the failure of the said Biggers Mobley to urge the claim until after the death of both of the

administrators of said estate, in connection with other circumstances, this defendant insists, show that said debt has been paid.

6. That if the said Biggers Mobley did fail to obtain from the said administrators payment and satisfaction of said debt, such failure arose from laches on his part so great and neglect so gross as to absolve this defendant from any liability which may have existed on his part to pay or contribute towards the payment of the same.

7. That there is a defect of parties defendant in the omission of the other heirs at law of the said T. K. Cureton or their representatives, to wit, of T. K. Cureton, Jr., Eliza R. Cureton, the widow of said deceased, and James E. Cureton, the two last named, who are now dead, having survived the said T. K. Cureton as his heirs at law.

8. That the said plaintiff ought not to be admitted to say that this defendant is bound, as heir at law of the said T. K. Cureton, deceased, by reason of real estate descended to him, to pay the said debt or any part thereof, because he says that the said Biggers Mobley, in his lifetime, on or about the 28th day of November, A. D. 1868, filed his bill of complaint in this Court against Thomas K. Cureton, Jr., this defendant, Francis D. Green and wife Virginia, James M. Green and wife Eliza Jane, therein and thereby, amongst other things, seeking to compel the payment and satisfaction of said debt from this defendant and other heirs at law of the said T. K. Cureton, deceased; and that thereupon, after full hearing, it was determined and adjudged by the said Court that this defendant is not bound to pay said debt or any part thereof, and that said bill, "so far as it seeks leave to make the heirs of the late T. K. Cureton liable for his said debt by reason of lands descended to them, be dismissed," which said bill, as to other matters, is still pending in this Court.

To this answer the plaintiff made no reply, but demurred as follows, viz.: "The plaintiff demurs to the first, fourth, fifth, sixth and eighth paragraphs of the answer of the defendant J. Samuel Cureton for insufficiency in not stating facts sufficient to constitute a defense or counter claim." Afterwards, by leave of the Court, before trial, the demurrer, so far as the same relates to the eighth section of the above answer, was withdrawn.

F. D. Green and wife answered as follows:

The defendants Francis D. Green and wife M. Virginia Green, answering the complaint herein, deny that the debt of Thomas K. Cureton to Biggers Mobley, referred to and described in the complaint, is still due and unpaid, as claimed by the plaintiff in his complaint; but, on the contrary, affirm (as they are informed) that the same has been fully paid and satisfied, and that now no liability for the same rests on the heirs at law of the said Thomas K. Cureton, deceased.

These defendants, on further answering, allege:

1. That Biggers Mobley himself, some six years after the note referred to became due, and about six years after the property of the late T. K. Cureton, described in the complaint, was partitioned and divided among the heirs at law, viz., some time in the year 1860, brought his action on the said note against S. B. Massey and J. E. Cureton, as administrator of said T. K. Cureton, deceased, for the collection of the same; that the said S. B. Massey and J. E. Cureton, as administrators aforesaid, had already, at the time the property, real and personal, of the said T. K. Cureton was partitioned, in 1854, reserved a sufficiency of the assets of the estate of their intestate to defray the expenses and pay off the debts outstanding against the estate; and that, after such reservation, they did not enter an appearance to the action aforesaid of Biggers Mobley on the note aforesaid, and that, by entering no appearance, making no defense to the action and suffering judgment to go against them by default on the said note, they admitted in their hands assets sufficient to pay the said debt, and that the heirs are in no way liable for the same.

2. That Biggers Mobley (if he has not collected the money from the said administrators, which defendants are unwilling to admit,) has all the time been looking to the said administrators to pay the said debt, and he has been guilty of gross negligence and laches, so that the plaintiff, as his representative, has now no right in this Court as against the heirs at law of the said T. K. Cureton, deceased, to recover in this action.

3. That the personal assets of the said T. K. Cureton, deceased, were amply sufficient to pay and discharge the entire indebtedness of the said deceased, and that a sufficiency to pay the same passed

into the hands of his administrators, Samuel B. Massey and James E. Cureton, and that the heirs at law are not liable.

4. That on the 6th day of December, 1869, at Charleston, the United States District Court for the District of South Carolina duly made a decree discharging the defendant F. D. Green from all his debts provable under the Act of Congress entitled "An Act to establish a system of uniform bankruptcy throughout the United States," approved March 2, 1867 ; that the supposed indebtedness alleged in this complaint, if any such ever did accrue, occurred before the granting of such discharge; and the alleged indebtedness is one that was provable against the estate of the defendant F. D. Green, in the proceedings in which said discharge was granted, and was not, nor any part thereof, created in consequence of a defalcation as a public officer or as an executor, administrator, guardian or trustee, or while acting in any fiduciary capacity. And that the lands which descended to defendant M. Virginia Green have all been sold as defendant Francis D. Green's property, under the same proceedings in bankruptcy, and that defendants, have now, since said proceedings in bankruptcy, no lands, tenements or hereditaments by descent from the said T. K. Cureton, deceased, and are not liable for the debt.

5. That on the      day of      , 1870, at Columbia, on an appeal taken to the Supreme Court of the State from Circuit decree, in an action or bill of complaint brought in the Equity Court for Lancaster County by Biggers Mobley (the intestate of present plaintiff) against all the heirs of said Thos. K. Cureton, deceased, and one John M. Beaty, as administrator of Samuel B. Massey, deceased, who was one of the administrators of the said Thos. K. Cureton, deceased, on the very same cause of action as that set forth in the complaint herein, the said bill of complaint was dismissed by the decree or judgment of the Court duly rendered, upon the merits of the whole case as presented, and by the said decree or judgment the defendant was relieved from paying the said sealed note or debt, being the very same as that upon which the present complaint is founded. And defendants claim that the said judgment is a bar to any recovery in this action, and so plead and claim judgment for costs.

The answer of the defendants J. M. Green and wife Eliza J. contains the same number of sections as the answer of F. D. Green

and wife, and is substantially the same in statement, with the exception that there is no allegation of bankruptcy in paragraph 5.

To the said answers of F. D. Green and wife, and of J. M. Green and wife, the plaintiff made no reply, but demurred to each as follows: " The plaintiff demurs to the paragraphs marked 1, 2, 3, 4 and 5 of the answer of the defendants F. D. Green and wife M. Virgina Green (and the same as to J. M. Green and wife) for insufficiency in not stating facts sufficient to constitute a defense or counter claim."

The cause upon the demurrers was heard before His Honor Judge Thomas at the June Term for 1872. The Judge overruled the demurrer generally by endorsing upon the record of the demurrer to each of the three answers the words " demurrer overruled."

Predicated on this order, the defendant J. S. Cureton, on the 20th of August, 1872, without notice to the plaintiff, put on file in the Clerk's office the following, entitled " a judgment for J. S. Cureton on demurrer," viz.: "An order having been entered in this action at regular term of the Court on 20th June, 1872, overruling the demurrer of the plaintiff to the answer of the defendant J. Samuel Cureton ; now, on motion of W. A. Moore, attorney for said defendant, J. S. Cureton, it is adjudged that the complaint herein be dismissed, and that the defendant J. Samuel Cureton recover of the plaintiff the sum of        dollars for his costs and disbursements.

After service of the notice of adjustment of costs hereinafter mentioned, the costs and disbursements were inserted in the blank above, and execution for the same issued. A similar paper was signed and filed by the Clerk in favor of the defendants F. D. Green and wife, and J. M. Green and wife, without notice to the plaintiff, and similar action had in regard thereto.

Three days after entry of said papers entitled "judgment on demurrer," &c., as aforesaid, the plaintiff was served by the defendant J. S. Cureton with notice to be made before the Clerk for adjustment of costs, in the following words, viz.: " The plaintiff's counsel will please notice the within statement of costs and disbursements of the defendant J. Samuel Cureton, and that defendant will apply to the Clerk ·for an adjustment of the same on the 26th day of August, instant, 10 o'clock, A. M." A similar notice was given by the other defendants.

At the time mentioned in the foregoing notice, the plaintiff filed with the Clerk his protest and grounds against the adjustment of costs in the following words:

"The plaintiff having been served with notice of motion for an adjustment of costs in this case, enters the following protest against said motion, and objects to the entry of judgment and execution for costs herein, upon the following grounds:

"1. Because no order or decree has yet been made to warrant said motion.

"2. Because the said case, above stated, is still upon the dockets of the Court, and no order affecting the merits thereof has yet been made.

"3. Because, after the overruling of the demurrer, the plaintiff has the right, under Section 195 of the Code of Procedure, to controvert the allegations in the defendant's answer which were demurred to, and the only effect of the decision upon the demurrer is to allow the defendant to bring up as matters of defense the facts set out in his answer."

Whereupon the Clerk, without notice to the defendants or their attorneys, made the following order:

"On hearing the following protest, and deeming the grounds therein stated to be sufficient, it is adjudged that the motion for adjustment of costs be denied, and that the judgments for costs, filed 20th August, 1872, signed by me in blank, severally, in favor of the defendants, J. S. Cureton, F. D. Green and wife, and J. M. Green and wife, in the absence and without notice to the counsel for the plaintiff, be, and the said judgments are hereby, vacated."

The cause then remained upon the docket until regularly called at the extra term of the Court held in July, 1874, when the presiding Judge made the following order:

" The demurrers to the answers in this case having been overruled by His Honor Judge Thomas, it is ordered that the complaint herein be dismissed."

Whereupon the defendants' attorneys and the said Clerk were served on the 7th day of August, 1874, with the following notice and grounds of appeal:

The defendants, or their attorneys, and Thomas H. Clyburn, Clerk of the Court of Common Pleas, will take notice that the plaintiff appeals to the Supreme Court from the order of His Honor Judge Thomas, in this action, filed on the 20th day of June, 1872, overruling the demurrers to certain parts of the answers of the defendants; and from the so-called judgment thereupon signed by the said Clerk on the 20th day of August, 1872, and set aside by him

on the 29th day of the same month; and also from the order of the Hon. T. J. Mackey, presiding Judge, made in this action at the extra term of this Court, entered July 10th, 1874, dismissing the complaint herein, upon the grounds following:

*Exceptions to order of Judge Thomas:*

1. Because the answers of the defendants were not sufficient in law in the particulars demurred to.

2. Because His Honor Judge Thomas should have accompanied his decision upon the demurrers with a provision saving the right of plaintiff to controvert said answers, as by the plaintiff's counsel requested at the argument on the demurrers.

*Exceptions to the so-called judgment taken before the Clerk of the Court:*

1. Because the said judgment could not be legally entered upon the order of Judge Thomas therein referred to.

2. Because the plaintiff had no notice of the entry of said judgment.

3. Because the same was annulled by the order whereby it was set aside by the Clerk because of the irregularity of its issue.

*Exceptions to the order of Judge Mackey:*

1. Because the effect of Judge Thomas' order was not to dispose finally of the case, but to leave the answers controverted by the plaintiff.

2. Because it did not appear whether or not Judge Thomas had granted or refused permission to plaintiff to controvert the answers, notwithstanding the overruling of the demurrers. It is respectfully submitted His Honor Judge Mackey should have granted such permission, as requested by plaintiff's counsel, when his order dismissing the complaint was under consideration before him, and which he declined because he considered himself precluded by the order of Judge Thomas.

*Kershaw,* for appellant:

This is an action on a sealed note, dated February 23, 1854, upon which there were payments as late as April 15th, 1857, brought against the heirs at law of the obligor to charge them, by reason of lands descended, with its payment.

A bill was filed in the Court of Equity, November 28, 1868, against the same parties and others, seeking to recover this same debt.

The bill was dismissed as to these defendants on the ground of laches in plaintiff's testator, "without prejudice to the plaintiff in any remedy he may be advised to pursue in a Court of law."—*Mobley* vs. *Cureton*, 2 S. C., 149.

This action was begun under the Code, June 13, 1871.

The questions presented are:

1. Whether lands assigned in partition to heirs, and assessed to pay a sum of money for owelty, are vested by descent or by purchase?

(*a.*) They are lands descended.

"If a person owning real estate dies seized or as owner without devising the same, the estate shall descend to his lawful descendants in the direct line of lineal descent." If they be more than one, the estate descends to all of equal consanguinity to the ancestor as "tenants in common."—4 Kent's Comm., 375.

The only variation to this rule in South Carolina is that the widow takes (as heir) one-third.—A. A., 1791, 5 Stat., 162.

The lands descended and vested in the heirs at law as tenants in common; had they not so vested, they would have had no title and there could have been no partition. Partition is merely a severance of interest between co-tenants.

2. Whether paragraphs 2 and 3 of J. S. Cureton's answer contain facts sufficient to constitute a defense or counter claim? .

(*a.*) It is not alleged or implied that the notes mentioned were received as payment, or that they were collected, or that it was the duty of plaintiff's testator to collect them.

3. Whether the allegation of the sufficiency of the personal estate of the obligor constitutes any defense?

(*a.*) It is immaterial whether the executor had or had not assets. The heir cannot plead that the executor had assets.— *Vernon* vs. *Valk*, 2 Hill Ch., 259; Com. Dig., Tit. Pleader, 2 E., 3.

4. Whether lapse of time less than twenty years and laches of the plaintiff's testator in prosecuting this claim can be pleaded in bar to this action?

(*a.*) Laches is the creature of equity.

The doctrine amounts to this, that Courts of equity will not give their aid to the enforcement of stale demands. They simply

"refuse to interfere."—2 Story's Eq. Jur., § 1520, and cases cited in note 4.

It is admitted that equitable defenses may be set up under the Code to a legal demand; but not a defense that only went so far as to induce Courts of equity to refuse the exercise of their peculiar powers. They must be *positive equities*, not *negative*. They must be such matters as would have authorized a Court of equity to exercise its extraordinary jurisdiction and enjoin the enforcement of the legal demand or would have been ground for an equity suit. Lapse of time and laches would not have authorized such interference or action.—Wait's Annotated Code, p. 263, note *b; Dobson* vs. *Pearce*, 2 Kernan, 166.

(*b.*) The allegations of lapse of time aside from laches are irrelevant, except as circumstances raising the presumption of payment. Defendants ought to have pleaded payment and proven it by the lapse of time and other circumstances.—Wait's Annotated Code, 257, note *a; Stover & Barnes* vs. *Duren*, 3 Strob., 450; *Dillard* vs. *Brian*, 5 Rich., 501.

5. Whether it is any defense that F. D. Green, who intermarried with one of defendants, was discharged in bankruptcy, and the lands descended to his wife had been sold by the Bankrupt Court, so that he had nothing now by descent?

(*a.*) The defendant pleaded *riens per descent*, except certain lands which he had aliened for a valuable consideration before action brought. Demurrer sustained.—*Hammond* vs. *Gaither*, 3 Harris & McHen., 218.

6. Whether the decree of this Court in the equity suit bars this action?

(*a.*) It is without prejudice.—*Mobley* vs. *Cureton*, 2 S. C., 149.

7. Is there a fatal defect of parties?

(*a.*) Persons severally liable upon the same obligation may, any or all of them, be included in the same action.—Code, § 143.

(*b.*) By statute in New York, (1837,) they are required to be joined.—4 N. Y. Stat. at Large, 500, § 73.

But they are not jointly liable.—*Kellogg* vs. *Olmstead*, 6 How., 487.

The adoption of the statute shows that it was not so before. There is no such statute here.

(*c.*) The reasons stated in the complaint justify the omission.

8. Was there a valid entry of judgment by defendants?

(*a.*) There was not, because it could only have been entered upon the direction of a Judge.—Code, § 302.

The Judge has simply overruled the demurrer.

(*b.*) If there were no such entry, plaintiff could not appeal.—3 Waits' Pr., 236.

(*c.*) There is no time less than two years within which an appeal may be taken if such were a valid entry of judgment.—Code, § 357.

(*d.*) If the matter come within Subdivision 2 of Section 11 of the Code of Procedure, notice of the order in writing must have been served to limit the time of appeal.

As to whether it was appealable from as an order.—Voorhies' Code, 8th ed., p. 689.

The party may acquire actual knowledge of the judgment or order in any manner; but unless the notice is actually served upon him, such knowledge will not limit the time of appeal.—4 Waits' Pr., 219.

There was, in fact, no order of the Court dismissing the complaint until July 10th, 1874.

*Allison*, contra :

The Act of the General Assembly amending the Code of Procedure, approved November 25th, 1873, limits an appeal from a judgment to three months.

The judgment in this case was entered and put on file on the 20th of August, 1872; therefore the appellant was limited to three months, beginning on the 25th November, 1873, in which to commence his appeal. He has not done so. It is now too late in this case and the appeal should be dismissed. The Clerk's order vacating judgment is irregular and void.

And it is also too late to appeal from Judge Thomas' order overruling the demurrers, dated June Term, 1872, upon which the said judgment is predicated.

The decision of the Court allowing or overruling a demurrer is in the form of an order for judgment in all cases, whether it gives leave to amend or not. Of course it must be appealed from while it remains an order, for after judgment is entered it becomes merged in the judgment; an appeal from the order would then be futile and irregular. The appeal must be from the judgment.—*King* vs. *Stafford*, 5 How., 30; *Lewis* vs. *Acker*, 8 How., 414; *Ford* vs. *Turner*, 13 How., 193; *Bentley* vs. *Jones*, 4 How., 335.

The order of Judge Mackey, of date the 10th July, 1874, dismissing the complaint, was made after the case had been pressed and called up by the appellants, and was wholly unnecessary. It was made not on the motion of respondents, but after the case had been pressed up by the appellants. The case had been ended two years before and was unnecessarily on the calendar.

If the defendants, on the merits of this case, have a valid, equitable defense against the demand of the plaintiff, it is the highest order of defense known to the law, and must prevail, whether the action should have, in its form or nature, been of an equitable or legal character, as marked by the former distinctions. Section 465, Code of Procedure, is in these words: "The provisions of this Code of Procedure apply to future proceedings in actions or suits heretofore commenced and now pending, as follows: 1. If there have been no pleadings therein, to the pleadings and all subsequent proceedings. 2. When there is an issue of law or of fact, or any other question of fact to be tried, to the trial and all subsequent proceedings."

Now, then, we contend that it has already been determined (*Mobley* vs. *Cureton*, 2 S. C., 140,) that the plaintiff was barred by his laches of his remedy in equity; or, in other words, that the defendants have set up and established a good equitable defense to the plaintiff's claim. Biggers Mobley, in this case mentioned, brought his equity suit on the same cause of action as that upon which the present action is based, and the Court refused him relief and dismissed his bill, and the present plaintiff, as his administrator, must be held bound by such judgment and estopped thereby in this action.

*Moore*, for J. S. Cureton:

This judgment in the case referred to defendants have set up in bar of the present action; and an issue at law thereupon having been joined by the demurrers of the plaintiffs, the Circuit Court, by overruling the demurrers, have in effect decided, and properly too, that such defense is sufficient to bar this action. Has the Circuit Court erred or not? We think not. Law and equity has been blended. This action has been brought under the Code of Procedure. The defendants, under the law, had a right to set up any equitable defense to the plaintiff's demand, and they have set up the identical equitable defense to this action which the Court has decided

to be a good one in a Court of equity.   If this Court has any peculiar
characteristics, as between law and equity, as marked out by the
English practice, it is a Court of equity.—Till. & Sherman, 320.
Its purpose (the provision in the Code blending law and equity)
and effect is to accomplish a perfect fusion of law and equity, so
that every action is as much equitable as a legal one.   This is the
purport of the latest decisions, although they do not use precisely
this language.—N. Y. Central Ins. Co. vs. National Prot. Ins. Co.,
14 N. Y., 85, 91.

The same rules, so far as possible, are to be applied to all classes
of actions, and each party is entitled to all the relief in one
action that he might have had under the former system, by pro-
ceeding both at law and in equity, and (if his claim is a legal one)
to no more than he would have been allowed to retain if he had
sued at law and his adversary had brought a counter action in
equity.—Barlow vs. Scott, 24 N. Y., 40.

Till. & Sherman, 684:   "The distinction between legal and
equitable actions being abolished, such judgment is to be granted,
in every species of action, as taking into consideration all the prin-
ciples of law and equity applicable to the case, may be proper.   The
same relief is not now to be granted through the medium of two
actions, one at law and one in equity, in relation to the same matter;
and whether the action is one formerly known as legal or as equitable,
the same rules are to be applied in all cases, and relief is to be ad-
ministered without any regard to such distinctions.   As it was one
of the chief purposes of equity to modify and control the operations
of the common law and deprive men of privileges which that law
conferred upon them against conscience, it follows that wherever
the principles of law and of equity come into collision, the former
are to be regarded as abolished by the Code.   In effect, we think
that every action is now to be regarded as an equitable one, and
every Court of record as at all times and for all purposes a Court
of equity."—N. Y. Central Ins. Co. vs. National Prot. Ins. Co., 14
N. Y., 85;   Crary vs. Goodman, 12 N. Y., (2 Kern.,) 265;   Dobson vs.
Pearce, idem, 156; 1 Abb., 97; Foot vs. Sprague, 12 How., 355; Des-
pard vs. Walbridge, 15 N. Y., 374.

We therefore conclude: First, that the plaintiff has delayed too
long in taking his appeal; and, secondly, if he be yet entitled to
be heard on his appeal from the judgment which has been entered
in the case, that the presiding Judge was correct in overruling the

demurrers, and that the effect of overruling the demurrers was to pronounce the defense made by the defendants as good and sufficient, and that the plaintiff is not entitled to recover his alleged demand.

The plaintiff demurred to the answer of the defendant J. S. Cureton because of the alleged insufficiency of each and every clause thereof (except the eighth) to constitute a defense.

This demurrer was overruled by the Court, June Term, 1872. Whereupon, August 20, 1872, the defendant J. S. Cureton entered a judgment dismissing the complaint.

It is denied by the appellant that this defendant had the right to enter such a judgment.

If he had, plaintiff cannot now appeal from the judgment; it is too late.—Act of 1873, amending Code, § 18, 500.

I. Was the judgment regular and proper?

1. It was.

" Where the matter in the answer admitted by the demurrer is sufficient in itself as a bar to the action, the proper course, on the demurrer being overruled, will be to enter a judgment dismissing the complaint, though there be issues of fact joined."—2 Whitaker's Practice, 195; *Wightman* vs. *Shanklin*, 18 How., 79.

2. If the order overruling the demurrer was ever erroneous, still the judgment into which the order was merged could alone have been appealed from; but, as we have seen from that judgment, (three months having elapsed since the Act limiting the right of appeal,) no appeal can now be allowed.

II. The order of Judge Mackey dismissing the appeal amounted to no more than a recognition of the correctness of defendant's judgment entered to the same effect, and although, perhaps, unnecessary, was not erroneous.

March 10, 1875.    The opinion of the Court was delivered by

WILLARD, A. J.    This action is brought by the executor of B. Mobley on a sealed note given by T. K. Cureton, deceased, to plaintiff's testator, against certain of the distributees of the estate of T. K. Cureton, as his heirs with assets descended.

Several answers were interposed by the parties defendant, and demurrers filed to certain portions of their answers.   The Circuit Court overruled these demurrers and gave judgment dismissing the complaint.

A preliminary objection is interposed to the appeal on the ground that it was not taken within three months after the entry of the judgment appealed from.

The facts bearing on this objection are, briefly, as follows: At the hearing at June Term, 1872, an order was endorsed by the Circuit Judge upon the record of the demurrers as follows: "Demurrer overruled."

No other order appears to have been made by the Circuit Judge until July 10th, 1874. Without other authority than the order contained in the memorandum just recited, the defendants entered up a judgment dismissing the complaint with costs. The Clerk was proceeding to adjust the costs, when, on objection on the part of the plaintiff, he refused to proceed further, and made an order as follows: "On hearing the following protest, and deeming the grounds therein stated to be sufficient, it is adjudged that the motion for adjustment of costs be denied, and that the judgment for costs filed 20th August, 1872, signed by me in blank, severally, in favor of the defendants J. S. Cureton, F. D. Green and wife, and J. M. Green and wife, in the absence and without notice to counsel for the plaintiff, be, and the said judgments are hereby, vacated."

This order was signed by the Clerk, and dated August 29, 1872. No further action was taken until July 10, 1874, when the following order was made by the Circuit Judge: "The demurrers to the answers in this case having been overruled by His Honor Judge Thomas, it is ordered that the complaint herein be dismissed."

The appeal was taken in due time, so far as the last named order is concerned; but it is contended that the order overruling the demurrers, having been made more than three months prior to the appeal, cannot be heard.

The order for judgment made July 10, 1874, must be regarded as equivalent to a final judgment based on the order overruling the demurrers. The order overruling the demurrers was necessarily interlocutory, as it did not follow as a necessity from it that the complaint should be dismissed.

The judgment in form entered by the Clerk without the direction of the Court was invalid.—Code, § 302. The order of the Clerk assuming to vacate that judgment need not be considered; for no powers of that nature can be exercised by the Clerk, but by the Court alone.

The appeal having been duly taken from the final judgment, all interlocutory orders necessarily affecting the judgment were open for revisal.—Code, § 11, Sub. 1, as amended, 15 Stat., 495.

The objection to the regularity of the appeal is not well taken.

The first objection raised by the demurrer relates to paragraph 1 of the answers of J. S. Cureton.

This paragraph denies that the defendant holds as heirs at law, on the ground that actual partition had been made among the distributees of T. K. Cureton, and that, for the purpose of such partition, the allotment was made according to prices or value fixed on the land by Commissioners appointed by the Court, and that the defendants, then infants, took the premises held by them at prices so fixed.

The fact that defendant holds under title derived through partition, as it regards the particular tract assigned to him, does not discharge his liability for the debts of his ancestor, imposed by the fact of assets of that ancestor descended to him. This point was ruled by this Court in *Barber* vs. *McAlliley*, (S. C.)

But although this averment is not good as a plea in bar to the whole of plaintiff's demand, it is ground in equity for relief as against the other defendants,—at least if the share of this defendant, being in excess of his proportion as distributee, was compensated for out of his individual estate.

The averments of the answer are somewhat indefinite and uncertain as it regards the statement of their ground of equitable interference; but the remedy in such case is, under § 183, to obtain an order that the pleading be made certain and definite, and not a demurrer. It follows that the proper consequence of overruling the demurrer, so far as this clause was concerned, was not a dismissal of the complaint, but its retention for the enforcement of plaintiff's legal demand and the consideration of any equities that might be shown to have arisen out of such advance by the defendant interposing the answer.

The fourth paragraph, which was also demurred to, alleged that the personal estate left by the said T. K. Cureton was very large, and far more than sufficient for the payment of all just debts against him. Considering this paragraph as intended as in itself a bar to the plaintiff's action, it was insufficient. It must be concluded that the order overruling the demurrers treated this paragraph as setting up a defense in bar, and, as such, affirming the sufficiency in point

of law of such matter in bar.   Such being the case, the order over-
ruling the demurrer to this paragraph is erroneous.   It was held in
*Vernon* vs. *Valk* (2 Hill Ch., 257,) that the heir cannot plead that
the executor has assets.   For the same reason he cannot plead that
personal assets originally sufficient had been wasted in the hands
of the personal representative.

The demurrer to the fifth and sixth paragraphs was properly
overruled.

The fifth paragraph pleads payment.   Although it unnecessarily
assumes to set forth the nature of the proof by which the defendant
hopes to establish the fact of payment, yet the facts and circum-
stances are not sufficiently detailed to enable the Court to deter-
mine on the face of the pleading whether an inference of payment
properly arises from them.

The same observation is applicable to the sixth paragraph.   Gross
laches is alleged against the plaintiff.   The nature of that laches is
not disclosed, and the Court cannot determine on the face of the
pleading whether that laches is of such a nature as to amount to
a wrong as it regards any duty that the plaintiff may have owed
to the defendant.   It is obvious, that, as it regards these paragraphs,
the order overruling the demurrer should have been followed by
proper orders for the trial of the issues of fact raised by these para-
graphs.

The defendants F. D. Green and wife answered, and portions of
their answer were affected by the demurrer.

Paragraph 1st pleads in bar a recovery had in the same cause of
action by Biggers Mobley, the plaintiff's testator, against the per-
sonal representatives of T. K. Cureton.   Judgment recovered with-
out satisfaction in an action against the personal representatives is
not a bar to an action against the heir for the debt of his ancestor
by reason of assets descended.

This would follow from what was held in *Bird* vs. *Houze*,
Speer Eq., 250.   The right of the creditor to proceed against the
heir after judgment against the personal representative is there
fully recognized.   The effect of the ruling upon the demurrer was
to sustain the validity of their obligation as a bar to the plaintiff's
demand, and in this respect it was erroneous.

Paragraph 2 alleges gross laches, but the matter of inducement,
as laid, points to the fact that the plaintiff's testator had looked to
the administrator for payment as the ground of affirming laches.

This does not constitute a defense, and the demurrer to this paragraph should have been sustained.

Paragraph 4 pleads discharge in bankruptcy under proceedings instituted subsequent to the indebtedness alleged in the complaint and the sale of the lands descended under such proceedings.

Ground existed for overruling the demurrer to this clause. It does not appear what interest in the lands descended was treated as assets of the husband's estate, or what became of the wife's interest, if any such interest existed at the time of bankruptcy, so that the rights of the parties cannot be determined on the face of the pleading. Under any aspect, it is presumable that the facts and circumstances relating to the proceedings in bankruptcy are a material part of the defendant's case, either as bearing on their legal or equitable rights.

Paragraph 5, as it stands, contains a good plea of a former action on the same cause of action between the same parties and final judgment denying the validity of the plaintiff's demand. This plea, as demurred to, must be tested by the matter set forth in the pleading, and recourse cannot be had to the record in the case recited therein to modify or affect the terms of the plea. The inspection of the record is matter of proof under an issue joined on the truth of the plea, and cannot be considered upon demurrer.

The answers of J. M. Green and wife were demurred to likewise; but as all the grounds of demurrer taken thereto are already disposed of in relation to the answers of F. D. Green and wife, it will not be necessary to make further reference to them.

In each of the three answers already considered there was one or more defenses which, if established by proof, would constitute a complete bar to the plaintiff's demand. Demurrers being interposed to these pleas, and these demurrers being overruled, a question arises whether a judgment dismissing the complaint was the proper proceeding on the part of the Court. This raises the question of the effect of a demurrer to an answer under the Code of Procedure.

Where an answer sets forth matter amounting to a counter claim, the plaintiff is bound either to demur or reply, (Code, § 176,) and, failing to do so, the defendant is entitled to judgment as it regards the matter of such counter claim, as upon an admission of the truth of its allegations.—§ 191. A counter claim relates to matter that might be the subject of an action and give rise to a judgment independently of the matters set forth in the complaint to which it is

interposed.    It is rather in the nature of a cross action than of a defense, and may be pleaded conjointly with as many defenses to the complaint as the defendant may have to offer.

Matters set forth by way of defense, whether of a legal or equitable nature, in an answer, and not amounting to a counter claim, are, by the Code, "deemed controverted by the adverse party as upon a direct denial or avoidance, as the case may require."— § 191.

The plaintiff, however, may demur or reply to any matter set forth in the answer.    This is conferred as a privilege and not as a necessity of pleading.    On the other hand, the Court may, if justice requires it, make an order requiring the plaintiff to reply to any new matter set up in the answer.—§ 176.

As the effect of a demurrer is not specifically defined by the Code, it must be gathered inferentially from it.    That the Code intended materially to change the nature and effect of pleading, is clearly evinced by Section 163, which says: "All the forms of pleading heretofore existing are abolished, and hereafter the forms of pleading in civil actions in Courts of record and the rules by which the sufficiency of the pleading is to be determined are those prescribed by this Code of Procedure."

Abolishing the forms of pleading necessarily abolishes the technical incidents depending wholly on such forms.    But the Code does not in terms or intention abolish the substantial characteristics of the several pleadings that are retained either in name or by their equivalents under other names.    Where an incident of pleading arises out of its substantial nature and not merely from its technical form, it cannot be considered as affected by this general provision of the Code.

The clause of Section 191, putting the allegations of the answer as affecting defenses other than counter claims at issue, without regard to subsequent pleading on the part of the plaintiff, is absolute, and nowhere in terms conditioned on the plaintiff's abstaining from interposing a demurrer as authorized in Section 176.    The two last mentioned Sections must be read together.    If consistent, there is no ground for qualifying the terms of Section 191 so as to exclude the case of matters demurred to.    Such an inconsistency cannot arise unless there is something in the substantial nature of a demurrer that renders it inconsistent with its use that matters demurred to should, after the demurrer is overruled, be regarded as subject to traverse.

A demurrer does not necessarily test the rights of the parties in suit. It questions alone the mode of statement of them in the pleadings demurred to, and tests the rights involved only so far as they are correctly stated in the pleading. If the defendant interposes a defense which, in the judgment of the plaintiff, is both insufficient in law and false in fact, it is perfectly consistent that he should question its legal character by demurrer in order to avoid the expense and delay attending the trial of an immaterial issue, and that, if in the Court its sufficiency in point of law should be established, he should be in a position to deny the truth of the matter alleged. It may be concluded that there is nothing in the substantial nature of a demurrer that is inconsistent with a subsequent issue of fact upon the very matter to which it relates. As the technical characteristics of a demurrer at common law, as dependent upon form, is inapplicable to pleadings under the Code, the rules of the common law practice determining the character of the judgment that should follow the overruling of a demurrer need not be considered, for they cannot operate on the text of the Code so as to give rise to a necessity for modifying Section 191 on the principles of construction.

The judgment should be set aside and the order overruling the demurrer modified to conform to the foregoing conclusions.

*Moses*, C. J., and *Wright*, A. J., concurred.